1

2  **NOT FOR PUBLICATION**

3





8  **UNITED STATES BANKRUPTCY COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10

11  In re                                                )

12  Tigran Boyadzhyan,                    )

13        Debtor.                              )        Case No. SV 03-19614 KT

                                                           )
14  _____)        Chapter 7

15  David Gottlieb, Chapter 7 Trustee    )        Adv. No. SV 04-01163 MT
                                                           )
16        Plaintiff,                           )        **MEMORANDUM OF DECISION**
                                                           )
17  v.                                                )        Date: September 29, 2005
                                                           )        Time: 9:30 a.m.
18  Akop Boyadzhyan,                       )        Place: Courtroom 302
                                                           )
19        Defendant.                          )
                                                           )
20  _____)

21                        <u>Introduction</u>

22          All parties have appeared in this action and are subject to the jurisdiction of this

23  Court.  This court has jurisdiction over the instant action.  David Gottlieb ("Trustee") is

24  the duly appointed Chapter 7 Trustee for the Estate of Tigran Boyadzhyan.

25          The Trustee brought a fraudulent transfer action under 11 U.S.C. § 544 and Cal.

26  Civ. Code § 3439.04 based on Debtor's transfer of real property and improvements

27  thereon located at 7047 Mary Ellen Ave., North Hollywood to his brother, Akop

28  Boyadzhyan (hereafter "Akop").

          Debtor filed his voluntary Chapter 7 bankruptcy case on November 23, 2004.

1

## Procedural Background

2      Before trial, Trustee filed a motion *in limine* to exclude parol evidence on the
3  interpretation of the grant deed.  Although the grant deed stated that Debtor's transfer
4  of real property was a "bonafide gift," Defendant wished to admit extrinsic evidence to
5  show that the transfer was really in satisfaction of a loan made in Armenia 16 years
6  ago.  Oral argument was heard on this issue on August 10, 2005 and on August 17,
7  2005 the motion *in limine* was granted in its entirety.  The order provided that the
8  "Notarized Agreement" identified in the Joint Pre-Trial Order as Defendant's Exhibit 1
9  was not to be offered or admitted into evidence and no other evidence, whether
10  documentary or testimonial, was to be offered or admitted into evidence for purposes of
11  contradicting, varying, explaining or interpreting the terms of the deed for the transfer of
12  the Property to Defendant, or pertaining to the facts or circumstances leading to the
13  execution and recordation of the deed.
14
15      The California parol evidence rule, codified under Cal. Civ. Proc. § 1856,
16  specifically applies to deeds.  Cal. Civ. Proc. § 1856(h).  Thus, this rule applies to the
17  grant deed in this case.  As noted from the bench, the grant deed was a fully integrated,
18  final expression of the parties, and was unambiguous.  As such, it would be improper to
19  consider parol evidence in interpreting the deed.  See In re Bennett, 298 F.3d 1059,
20  1064 (9th Cir. 2002); Baker v. Ramirez, 190 Cal. App. 3d 1123, 1134 (Cal. App. 1987);
21  Safwenberg v. Marquez, 50 Cal. App. 3d 301, 306 (Cal. App. 1978).  Defendant argued
22  that he does not read English and did not know what the grant deed said.  Such
23  evidence is not admissible under controlling precedent.  See Arboireau v.
24  Adidas-Salomon AG, 347 F.3d 1158, 1164-65 (9th Cir. 2003) (interpreting Oregon law
25  to require that when a sophisticated party chooses to contract in the English language,
26  that party may not use difficulties with the English language as an excuse to avoid the
27  implications of the contract); Pacific State Bank v. Greene, 110 Cal. App. 4th 375, 393
28

(Cal. App. 2003) (approving the maxim that a party who signs a contract "cannot complain of unfamiliarity with the language of the instrument").

### Findings of Fact

Based on the undisputed facts in the pretrial order, the testimony at trial and the exhibits introduced at trial, I make the following findings of fact.

Tigran Boyadzhyan (hereafter "Tigran") came to the United States from Armenia in 1988. Tigran ran his own carpet cleaning business, and appears to have done well at first. He bought a house at 6857 Mammoth Ave., Van Nuys, California. He resides there now, and has claimed a $75,000 homestead exemption in this property in his Chapter 7 bankruptcy.

Debtor also purchased a house at 7047 Mary Ellen Ave., North Hollywood, California ("Property"). On or about June 4, 2001, Debtor transferred this Property to his brother, Akop.

Tigran's health problems appear to have started at least as early as February 2001. He was originally admitted to Valley Presbyterian Hospital on February 10, 2001. He was subsequently transferred to Kaiser Hospital in Panorama City on February 16, 2001. On February 28, 2001, he underwent a cardiac catheterization and the placement of a cardiac defibrillator.

According to a letter from his doctor, Sami Azzam, M.D., (Exhibit 7), Tigran's "hospital stay was complicated with lung infection due to ventilator machine." During this hospital stay, "he received full resuscitation on the respiratory and circulatory support and he recovered slowly. He remained in anoxic encephalopathy and his memory gradually improved. However he had significant impairment of his calculation and memory, and up to now, he is unable to participate in any work activities." (See id.)

Neither the Debtor, Tigran, nor his brother, Akop, disputed Dr. Azzam's findings. In fact, they both appeared to be very concerned about Tigran's health. Tigran testified

that he understood that he would be going back to work at some point after he received the pacemaker.  He stated that he thought he was getting better following his first hospitalization, but could not provide any detail or basis for why he believed that.  When asked what his doctors told him to make him believe that, he said merely that the doctors said he *might* get better, and he became quite defensive and non-responsive when asked anything else on this topic.

On June 4, 2001, Debtor recorded a Grant Deed evidencing and effectuating the transfer with the Los Angeles County Recorder's Office.  The Grant Deed states that the transfer was a "bonafide gift" and the "grantor received nothing in return."  In addition, Debtor testified in his deposition that he reviewed the grant deed, knew what it said and knew that the deed stated the transfer of his house was a gift.  (Tigran Boyadzhyan Depo. p. 31).

At the time of the transfer, the Property had a value of approximately $170,000 to $240,000.  At this time, there was a first deed of trust on the Property in favor of Washington Mutual in the amount of approximately $58,000, on which the Debtor was solely liable.  While the earlier *in limine* ruling precluded testimony Defendant wanted to introduce concerning a debt Tigran owed to Akop arising in Armenia, Akop testified that he had made the mortgage payments on the Property through the payments he gave Tigran each month to enable Tigran to pay his bills.  He did not provide any details concerning how many payments or how much was paid.

Debtor's tax returns for the year 2001 show he had an adjusted gross income of $4,424 for 2001.  At or around the time of the transfer of the Property, Debtor had credit card debts slightly in excess of $15,000.  At and before the time of the transfer, Debtor was unemployed.  Akop testified that he had to help his brother pay his bills at this time as well as later.  How frequently he did this was unclear.

- 4 -

Akop is the older brother and has a wife and three children. He was visibly upset when testifying about his brother Tigran's habits back in 2001. Akop was concerned about Tigran's gambling and drinking and sometimes followed Tigran to see what he was doing. Akop stated that he had to make sure the bills were paid on time. While he claimed that Tigran had money from his savings from years of working, Akop said he still had to make sure Tigran handled his money responsibly.

Tigran sustained a full cardiac arrest on June 10, 2001 at home. He was revived with CPR by paramedics who were called to the house and placed him on a ventilator. He remained in a coma for a few weeks thereafter.

Following this second hospitalization, Tigran's financial situation worsened along with his health. While his unsecured debt in June 2001 was approximately $15,000, it had climbed to $146,000 by the time he filed bankruptcy in November 2004.

While both Tigran and Akop testified through an Armenian interpreter, they did start answering a few of the questions when they were posed in English before the interpreter had completed his translation into Armenian. Both Tigran and Akop continuously argued with the Trustee's counsel or refused to answer questions directly. While Tigran has a documented medical condition resulting in problems with his memory, he did appear to recollect events selectively and to just throw answers out without really thinking or attempting to recall any details. Akop testified generally about how much money he lent his brother, and attempted to portray the house transfer as a formality because he had been paying for it all along, but he would simply answer "I don't remember" when asked anything specific. When the Trustee's counsel attempted a number of times to inquire into how much money Akop actually lent his brother, Akop answered "I don't remember - and that's it," and simply refused to answer questions. He also disputed whether any of these transfers of money between the brothers were "lending" money, and just insisted he had a duty to take care of his brother.

- 5 -

## Conclusions of Law

Pursuant to 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim.  California fraudulent transfer law is applicable in this adversary proceeding, because the transfer occurred in California, the Property is located in California and both Debtor and Defendant reside in California.

California Civil Code § 3439.04(a) provides:

(a)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred the obligation as follows:

(1)    With actual intent to hinder, delay or defraud any creditor of the debtor.

(2)    Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(A)    Was engaged or was about to engage in a business or transactions for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(B)    Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Cal. Civ. Proc. § 3439.04(a).

## First Cause of Action

Trustee has alleged in his first cause of action that Debtor had the actual intent to hinder, delay or defraud creditors.  Fraud, in the sense of morally culpable conduct, does not need to be present to find an actual fraudulent transfer.  Plotkin v. Pomona Valley Imports, Inc., (In re Cohen), 199 B.R. 709, 716 (9th Cir. B.A.P. 1996).  The focus is on the state of mind of the debtor.  Id.  Neither malice nor insolvency are required.  Id. at 717.  Actual intent may be proven by a preponderance of the evidence.  In re Food & Fibre Protection, Ltd., 168 B.R. 408, 418 (Bankr. D. Ariz. 1994) (citing Grogan v. Garner, 498 U.S. 279 (1991)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     In order to determine whether a transfer was made with the requisite intent, courts have developed what are known as the "badges of fraud." <u>Kupetz v. Wolf</u>, 845 F.2d 842, 846 (9th Cir. 1988).  Case law reflects that actual intent is typically proven from circumstances surrounding the transaction, and a confluence of the "badges of fraud" may constitute an intent to hinder, delay, or defraud creditors, but a finding of badges is not a requirement of a determination of actual fraud. <u>See</u> <u>Food & Fibre</u>, 168 B.R. at 418; <u>see also</u> <u>In re Acequia</u>, 34 F.3d 800, 806 (9th Cir. 1994) ("[T]he confluence of several [badges of fraud] can constitute conclusive evidence of actual intent to defraud . . . .").

     Recently, the California Legislature codified eleven factors, or "badges of fraud," which may be considered, among others, in determining actual intent.  The Legislature specifically stated that "the amendment to this section . . . does not constitute a change in, but is declaratory of, existing law, and is not intended to affect any judicial decisions that have interpreted this chapter."  Cal. Civ. Code § 3439.04(c).  These badges are: (1) whether the transfer or obligations was an insider; (2) whether the debtor retained possession or control of the property transferred after the transfer; (3) whether the transfer or obligation was disclosed or concealed; (4) whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) whether the transfer was of substantially all the debtor's assets; (6) whether the debtor absconded; (7) whether the debtor removed or concealed assets; (8) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) whether the debtor transferred the essential

assets of the business to a lienholder who transferred the assets to an insider of the debtor. Cal. Civ. Code § 3439.04(b).

Here, given the circumstances surrounding the transfer, several of the badges of fraud are present. First, Debtor transferred the Property to an insider, his brother.

Next, Debtor transferred the Property, worth at least $170,000, without receiving any value whatsoever, let alone reasonably equivalent value. The reasonably equivalent value analysis is directed at comparing what the debtor surrendered and what the debtor received. In re Pajaro Dunes Rental Agency, Inc., 174 B.R. 557, 578 (Bankr. N.D. Cal. 1994); In re Bateman, 646 F.2d 1220, 1222 (8th Cir. 1981) (gratuitous transfer of valuable property raises presumption of actual fraudulent intent necessary to bar discharge under Section 14(c)(4) of former Bankruptcy Act). In this case, Debtor surrendered Property worth at least $170,000 and received nothing in return.

While Akop and Tigran Boyadzhyan both tried to justify the transfer based on assertions that Akop helped Tigran by paying his bills and lending him money when needed, neither of them could provide any specifics. They were extremely defensive and hostile and acted as though what they did with their finances and property was none of the Trustee's business. The bank statements turned over to the Trustee also conveniently omit the June 2001 statement - the month the property was transferred.

Further, Debtor incurred substantial debts shortly after the transfer and knew or should have known he would continue to incur additional debts which he would not be able to pay. Within two years after the transfer, Debtor increased his unsecured debt by over $125,000 and filed bankruptcy. Specifically, at or about the time of the transfer in June 2001, Debtor had in excess of $15,000 in credit card debt. Debtor's taxable income for 2001 was $4,424. Before the transfer, by his own admission, Debtor suffered severe cardiac arrest and related illnesses which rendered him unable to be employed. Given these admitted facts, Debtor had to know that if the Property

1    remained his, his creditors would be able to seek to collect on their claims against the

2    equity in the Property.  By transferring the Property to his brother, knowing he was

3    unable to work, Debtor intended to hinder, delay or defraud creditors.

4        By the time of the bankruptcy filing, again by Debtor's own admission, he had

5    incurred an additional $125,000 of debt, illustrated by Debtor's Schedule F, which lists

6    claims in excess of $146,000.  If Debtor had not made the transfer, but instead sold the

7    Property for its reasonably equivalent value, Debtor would likely have been able to pay

8    the additional $125,000 of claims as they came due, and likely would have avoided

9    seeking bankruptcy protection.

10

11        While Tigran asserted that he believed he would go back to work, he provided no

12    reasonable basis for that belief.  While it is understandable that both he and Akop

13    would hope that his health would improve, their actions at the time and the doctor's

14    report make it clear that they were both very concerned about Tigran's future earning

15    capability.  Even if Defendant's evidence of a 16 year old debt incurred in Armenia were

16    admissible, there appears to have been no reason to transfer the Property shortly after

17    a lengthy hospitalization for a serious and debilitating illness other than to put it out of

18    reach of Tigran's creditors.

19                                    Second Cause of Action

20        Trustee has alleged in his second cause of action a constructive fraud theory -

21    that Debtor received no consideration for the transfer and intended to incur, or believed,

22    or reasonably should have believed that he would incur debts beyond his ability to pay

23    as they became due.

24        The test under California Civil Code § 3439.04(a)(2) measures whether a debtor

25    would reasonably have been able to pay debts as they come due after making the

26    questionable transfer.  See Pajaro Dunes, 174 B.R. at 593.  Reasonableness is

27    measured through the use of cash flow projections and other forward-looking sources

28

of evidence. Id. Additionally, it is not necessary for the Chapter 7 Trustee to prove that a particular debt was contemplated; a general intention is enough. Hartnett v. Doyle, 64 S.W. 2d 227, 233 (Tenn. App. 1932) (citing 2 Pomeroy's Equity Jurisprudence, § 971 (3d ed. 1798)).

The facts relevant to the actual fraud analysis also apply to the constructive fraud analyses. For example, Defendant has stipulated that approximately one year prior to the transfer, Debtor suffered from severe cardiac arrest and related illnesses rendering him unable to be employed. Additionally, Defendant has stipulated that at the time of the transfer Debtor was unemployed and prior to the time of the transfer Debtor was also unemployed. Further, Debtor's tax returns for 2001 show an adjusted gross income of only $4,424. Finally, in addition to the mortgage on his own home, Debtor had significant credit card debt. As such, at the time of the transfer, Debtor did not reasonably believe he would be able to pay his future debts as they came due, when he was unable to work and severely ill. Yet, he knew he would incur ordinary debts that people incur. Given his health condition, he would have known that he might well incur significant medical bills that health insurance might not cover.

At the time of the transfer, Debtor had between $112,000 and $182,000 in equity in the Property. In light of the inevitable debts he would later incur and the debts he then had due to his deteriorating health condition and inability to work, the only reasonable course was for Debtor to keep such a valuable asset. By making the transfer, Debtor depleted his assets by approximately $150,000. That asset could have been used to pay for future debts. A bankruptcy filing could have been avoided. Clearly, Debtor knew or should have known that if he made the transfer, he would have incurred debts that he would be unable to pay as they came due. As such, as contemplated by California Civil Code § 3439.04(a)(2)(B), Debtor made the transfer at a

1   time when he "[i]ntended to incur, or believed or reasonably should have believed that

2   he . . . would incur, debts beyond his . . . ability to pay as they became due."

3                    <u>Third and Fourth Causes of Action</u>

4           In the Third Cause of Action, the Trustee requests this Court to find that he is

5   entitled to recover for the estate the Property or value of the transfer under 11 U.S.C. §

6   550.  In the Fourth Cause of Action, the Trustee requests this Court to find that,

7   pursuant to 11 U.S.C. § 551, he is entitled to preserve the avoided transfer for the

8   benefit of the estate.  Based on the above findings of fact and conclusions of law, these

9   will be granted as well.

10          The Trustee shall submit a proposed judgment consistent with this ruling.

11

12

13  DATED: November ___, 2005

14

15                                          _____

16                                          MAUREEN A. TIGHE
                                            United States Bankruptcy Judge
17

18

19

20

21

22

23

24

25

26

27

28

                                    - 11 -

# CERTIFICATE OF SERVICE BY MAIL

I certify that a true copy of this **MEMORANDUM OF DECISION** was mailed on NOV 1 2005 to the parties listed below:

Sara L. Chenetz
DLA Piper Rudnick Gray Cary US LLP
1999 Avenue of the Stars, Fourth Floor
Los Angeles, CA 90067-6022

Aris Artounians
520 N. Central Ave., #660
Glendale, CA 91203-1918

Dale K. Galipo
Law Offices of Dale K. Galipo
21800 Burbank Blvd., Ste. 310
Woodland Hills, CA 91367

David K. Gottlieb
Chapter 7 Trustee
Siegel, Gottlieb, Mangel & LeVine LLP
15233 Ventura Blvd., 9th Floor
Sherman Oaks, CA 91403-2201

Akop Boyadzhyan
7047 Mary Ellen Ave.
North Hollywood, CA 91605

Tigran Boyadzhyan
6857 Mammoth Ave.
Van Nuys, CA  91405

Dated:   NOV 1 2005                              *Jewell M. Williams*
                                        _____
                                                DEPUTY CLERK